UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

CYNTHIA GREEN,
    Plaintiff,

-vs-                                                  Case No.
                                                          Hon.

NATIONWIDE ARBITRATION SERVICES, LLC,
COOPER FINANCIAL, LLC,
MARK GRAY,
MATTHEW MARCUCCI, and
JOHN AND/OR JANE DOES 1-30,
    Defendants.

**COMPLAINT & JURY DEMAND**

*Plaintiff, Cynthia Green, states the following claims for relief:*

### Introduction

1. This action involves the use of abusive, deceptive, and unfair debt collection practices by Defendants in an attempt to collect a debt allegedly owed by the plaintiff, Ms. Green.

2. Defendants, by and through their agents, placed collection calls to Ms. Green's cellular telephone to collect on a debt which Defendants alleged that she owed.

3. This complaint is filed on behalf of Ms. Green for damages to stop Defendants' continual use of abusive, deceptive, and unfair debt collection practices.

### Jurisdiction

4. This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§ 1331, 1337.

5. This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Venue

6. The transactions and occurrences which give rise to this action, namely the collection letters and calls received by Ms. Green, occurred in Oakland County.

7. Venue is proper in the Eastern District of Michigan.

## Parties

8. The Plaintiff to this lawsuit is Cynthia Green ("Ms. Green"), a natural person and resident of Oak Park, MI 48237.

9. The Defendants to this lawsuit are as follows:

    a. Nationwide Arbitration Services, LLC ("Nationwide"), a foreign company doing business in Michigan, with its principal place of business believed to be located in Hamburg, New York 14075. The New York Secretary of State is designated as agent of the limited liability company upon whom process against it may be served.

    b. Cooper Financial, LLC ("Cooper"), a foreign company doing business in Michigan, with its principle place of business believed to be located at 8070 Beechmont Ave, Bldg. A, Ste 1, Cincinnati, Ohio 45255, with its registered agent, Mark Gray, maintaining an office at the same address.

    c. Mark Gray, in his capacity as organizer and owner of Cooper.

    d. Matthew Marcucci, in his capacity as organizer and owner of Nationwide.

    e. John and/or Jane Does 1-4, managers of Nationwide. Plaintiff is informed and believes and on that basis alleges that Defendant Does 1–4 are officers, directors, or managing agents of Nationwide who are directly responsible for Nationwide's pattern and practice of abusive, deceptive, and unfair debt collection practices.

    f.    John and/or Jane Does 5-30, debt collectors that are employees and potential managing agents of Nationwide and use the following aliases, among possible others, when calling consumers to collect debts: Catherine Vaughn, Dave Nasword, Brian Hurin, Kaylee Thomas, Kaylee Taylor, Matthew Jasinski, Joe Agro, Joe Agate, Matt Connors, Thomas Riley, Patrick Wagner, Joseph Allen, Brandon Davis, Joshua Bryant, James Summers, Haley James, Jack Ryan, Mark Goodman, Dean Snyder, Dave Stone, Jennifer Collins, Jessica Smith, Brittany Daniels, Manny McMannus, Ms. O'Brien, and Chelsea Doe.

## General Allegations

10. Ms. Green meets the definition of a "consumer" under 15 U.S.C. § 1692a(3).

11. Nationwide is a debt buyer and collection company that regularly collects debts owed to another and, therefore, meets the definition of a "debt collector" under 15 U.S.C. § 1692a(6).

12. Cooper is a collection company that regularly collects debts owed to another and, therefore, meets the definition of a "debt collector" under 15 U.S.C. § 1692a(6).

13. On May 8, 2012, Ms. Green applied for and obtained a $1,000 loan from Great Plains Lending, LLC ("GPL") on its website, www.greatplainslending.org.

14. Some time prior to March 2014, Nationwide was engaged by GPL to collect the debt allegedly owed by Ms. Green.

15. Upon information and belief, GPL engaged Nationwide under a written agreement authorizing Nationwide to collect from Ms. Green on behalf of GPL.

16. Upon information and belief, Nationwide and Cooper run a common joint venture, pursuant to a written agreement, to collect debts from consumers, including Ms. Green.

17. Cooper accepts these payments with the knowledge that it is accepting the payments on behalf of Nationwide, and that the money accepted is in repayment of debts.

### Specific Allegations Related to Nationwide and Its Management

18. Ms. Green incorporates the preceding allegations by reference.

19. Pursuant to New York Limited Liability Company Law, Nationwide is required to provide an address to the New York State Department of State ("NY DOS") to which process shall be mailed.

20. As required, Nationwide provided the following address to which the NY DOS shall mail process: Matthew Marcucci, 4535 Southwestern Blvd., Suite 803A, Hamburg, New York, 14075.

21. Mr. Marcucci, in his capacity as Nationwide's organizer, signed and filed Nationwide's Articles of Organization with the State of New York.

22. Mr. Marcucci also refers to himself as Nationwide's Compliance Officer in a response letter to the NY Attorney General's Bureau of Consumer Frauds.

23. Further, Mr. Marcuucci is listed as Nationwide's Compliance Review Specialist on Nationwide's Better Business Bureau ("BBB") Business Review page.

24. In his capacity as owner, managing agent, and compliance officer of Nationwide, Mr. Marcucci created, authorized and/or implemented Nationwide's telephone policies, procedures and practices, including its pattern and practice of abusive, deceptive, and unfair debt collection practices.

25. In corresponding with Ms. Green, Nationwide and its agents failed to provide Ms. Green with the proper suite number where Nationwide is located.

26. Other than the general street address and city, Nationwide and its agents refused to provide Ms. Green with a mailing address or physical address where the company can be contacted.

27. In complaints made to the NY Attorney General's Bureau of Consumer Frauds and Protection, other consumers identified multiple addresses that were provided to them by Nationwide, including: Suites 803, 803A and 210 at the 4535 Southwestern Boulevard address, and 1567 Military Road, Buffalo, NY 14217.

28. However, in a letter sent by Mr. Marcucci to the NY Attorney General's Bureau of Consumer Frauds and Protection in response to one consumer complaint, Mr. Marcucci identified the executive office address for Nationwide as 4535 Southwestern Blvd, Suite #209, Hamburg, NY 14075.

29. This suite number was not provided by Nationwide to Ms. Green, even after she asked for Nationwide's proper mailing address.

30. On information and belief, Nationwide refuses to provide its full, correct address to consumers in an attempt to fraudulently conceal the identities of the entities and individuals involved with its unlawful debt collection practices.

31. Furthermore, consumers have also complained that when they ask for written validation of the debts or notice of collection, Nationwide and its agents refuse to send anything by mail and, rather, state they can only send the information by email.

32. The email address used by Nationwide is nationwidearbitration@gmail.com.

33. Nationwide's refusal to send written validation of debts or notice of collection by mail further brings its status as a legitimate, law-abiding debt collection company into

question.

34. In addition, Nationwide has been known to make unauthorized debt collection calls to consumers from six separate 800-numbers, only one of which it lists as a contact number on its letterhead.

35. Nationwide has been the target of numerous complaints concerning its calls made from these six numbers and its pattern and practice of abusive, deceptive, and unfair debt collection practices.

36. Nationwide has received an "F" rating on the BBB website due to 9 complaints filed against it, each related to billing/collection issues (BBB Website, Business Review of Nationwide Arbitration Services, http://www.bbb.org/upstate-new-york/business-reviews/collection-agencies/nationwide-arbitration-services-in-hamburg-ny-235973913, downloaded September 22, 2014).

37. Nationwide has received hundreds of consumer complaints on 800notes.com relating to its abusive and deceptive collection practices and calls from each of its six, known 800-numbers (800notes, Consumer Complaints regarding calls from Nationwide from phone numbers 844-714-2290, 844-818-2313, 866-848-5350, 866-344-7859, 855-212-7258, and 855-808-1176, http://www.800notes.com, each of the six complaint pages downloaded September 22, 2014).

<strong><u>Specific Allegations Related to Cooper Financial</u></strong>

38. Ms. Green incorporates the preceding allegations by reference.

39. Cooper accepts service of process through its registered agent, Mark Gray, at 8070 Beechmont Ave, Bldg. A, Ste. 1, Cincinnati, Ohio 45255.

40. On information and belief, Mr. Gray is listed as the registered agent for Cooper as he is the organizer and owner of the limited liability company.

41. Mr. Gray is listed as Cooper's principal owner on Cooper's Better Business Bureau ("BBB") Business Review page.

42. In his capacity as owner and managing agent of Cooper, Mr. Gray created, authorized and/or implemented Cooper's policies, procedures and practices, including its pattern and practice of abusive, deceptive, and unfair debt collection practices.

43. The email address used by Cooper is cooperfinancialbilling@gmail.com.

44. Cooper has received an "F" rating on the BBB website due to 22 complaints filed against it, 16 of which are related to billing/collection issues (BBB Website, Business Review of Cooper Financial, LLC, http://www.bbb.org/cincinnati/business-reviews/financial-services/cooper-financial-llc-in-cincinnati-oh-90002300/, downloaded September 22, 2014).

45. Further, on April 9, 2014, Cooper's accreditation in the BBB was revoked by the BBB's Board of Directors due to its failure to promptly respond to complaints, and also its failure to provide the BBB with all information required to evaluate compliance with BBB standards.

46. Many of the complaints against Cooper stem from their abusive, deceptive and unfair debt collection practices used while attempting to collect debts on behalf of Nationwide.

### Specific Allegations Related to the Collections Against Ms. Green

47. Ms. Green incorporates the preceding allegations by reference.

48. In or around March 2014, Nationwide communicated with Cynthia Green for the first

time.

49. During a call from Nationwide to Ms. Green placed on March 31, 2014, Ms. Green requested that Nationwide validate the debt.

50. On April 1, 2014, Nationwide sent its validation notice pursuant to 15 U.S.C. 1692g to Cynthia Green ("April 1st Communication").

51. The April 1st Communication was sent to Ms. Green as an attached .pdf document to her personal email address.

52. The April 1st Communication was sent by nationwidearbitration@gmail.com.

53. Although the April 1st Communication was sent to Ms. Green's correct email address, the actual hard copy letter included an incorrect address line. It identified Ms. Green's address improperly as her father's home address in Illinois.

54. Ms. Green never provided GPL nor Nationwide with her father's Illinois address.

55. The April 1st Communication included the amount of the debt and name of the creditor to whom the debt is owed, as required by 15 U.S.C. 1692g(a)(1) and (2).

56. However, according to the April 1st Communication, the balance now owed was $3,659.99, but it did not explain how the original loan amount of $1,000 had now reached that balance.

57. The April 1st Communication also included a settlement offer amount of $1,200.00.

58. However, it did not include a disclosure that it was a communication from a debt collector, that it was an attempt to collect a debt, or that any information obtained would be used for that purpose, as required by 15 U.S.C. 1692e(11).

59. Rather, the April 1st Communication included the heading "Nationwide Arbitration

Services", suggesting that Nationwide is an arbitration or otherwise legally affiliated service as opposed to a debt collector.

60. Also, the April 1st Communication did not include a statement that the debt would be assumed valid by Nationwide if Ms. Green did not dispute the validity of the debt within 30 days after receipt of the April 1st Communication, as required by 15 U.S.C. 1692g(a)(3).

61. Further, it did not include a statement that if Ms. Green notified Nationwide in writing within 30 days that the debt or any portion thereof was disputed, Nationwide would obtain verification of the debt or a copy of a judgment against her and that a copy of such verification or judgment would be mailed to her, as required by 15 U.S.C. 1692g(a)(4).

62. Lastly, the April 1st Communication did not include a statement that Nationwide would provide Ms. Green with the name and address of the original creditor, if different from the current creditor, if she requested that information in writing within 30 days, as required by 15 U.S.C. 1692g(a)(5).

63. Nonetheless, after receiving the April 1st Communication by email, Ms. Green contacted Nationwide and agreed to pay $50/month for eight months beginning on April 5, 2014 and ending on November 5, 2014.

64. These eight payments, totaling $400, were to be considered as payment-in-full for the underlying debt.

65. On information and belief, Nationwide authorized Cooper to collect the eight $50 payments from Ms. Green.

66. After verbally agreeing to this payment arrangement with an agent of Nationwide, Ms.

       Green e-signed a credit card authorization form on April 4, 2014 authorizing Cooper to make withdrawals as agreed; namely, to withdraw eight monthly payments of $50 each from her prepaid account beginning on April 5, 2014 and ending on November 5, 2014.

67. On April 5, 2014, the first payment was automatically withdrawn by Cooper from Ms. Green's prepaid American Express Serve account.

68. On April 7, 2014, Nationwide sent a second letter attachment by email to Ms. Green regarding the payment arrangements that Nationwide, Cooper and Ms. Green had agreed upon a few days earlier ("April 7th Communication").

69. The April 7th Communication reflected the updated settlement amount of $400.

70. Unlike the April 1st Communication, the April 7th Communication was properly addressed to Ms. Green at her current address and included the required disclosures that it was an attempt to collect a debt.

71. However, the heading "Nationwide Arbitration Services" and content of the letter, including reference to "dismissal of your case with our office", still suggest that Nationwide is an arbitration or otherwise legally affiliated service as opposed to a debt collector.

72. On or around May 5, 2014, the second $50 payment was automatically withdrawn by Cooper from Ms. Green's prepaid account.

73. However, on May 5, 2014, Ms. Green received the following voice message:

"Yes, hello this message is for Ms. Cynthia Green. Cynthia, this is Catherine Vaughn contacting you from the litigation filing division for Nationwide Law Firm. Contacting you today in reference to your out-of-court settlement contract with our firm. Please be advised, your payment came back returned as insufficient funds placing you in immediate breach. At this time, all civil and criminal charges against

you have been reinstated. We are mandated by state, motion has been filed to execute subpoena, which will be issued at the residence or place of employment within the next 24 to 48 hours. Now, Cynthia, prior to the prosecution I wanted to speak with you. If this was an oversight of some sort, I have to reinstate this case before Oakland County solidifies court date. I am serving final legal notice for sole defendant, Cynthia Green. We have date of birth 4/9/75, in reference to docket 172659. Today is May 5, please be advised your payment came back in breach, all civil and criminal complaints have been reinstated and motion has been filed to execute subpoena in reference to all civil and criminal prosecution. To end all proceedings, Ms. Green, you need to contact the attorney's office prior to 2 p.m. today. The direct number to the litigations department is 1-844-818-2313 extension 301, docket 172659."

74. As with the April 1st Communication, Nationwide failed to notify Ms. Green that it was a debt collection company in its voicemail.

75. Instead, Nationwide blatantly held itself out to be a law firm that was going to "reinstate civil and criminal charges", even though no such charges had previously been made.

76. Further, Nationwide threatened legal action that was not truly intended to be taken, as shown by the fact that Nationwide has not actually taken any legal action against Ms. Green as of the date of this Complaint, or at least has failed to notify Ms. Green of any legal action being taken against her.

77. Nationwide called Ms. Green a second time on May 5, 2014 at 1:33 p.m.

78. During this call, a Nationwide collector told Ms. Green that she owed $1,100.

79. Ms. Green told the collector that she had agreed to pay a total of $400, not $1,100.

80. Ms. Green told the collector that she had a letter from Nationwide showing that she only owed $400.

81. Nonetheless, the Nationwide collector told Ms. Green that if she did not pay $1,100, Nationwide would bring criminal and civil charges against her.

82. Throughout the conversation, the Nationwide collector was extremely rude and she cursed

at Ms. Green multiple times.

83. Ms. Green asked the Nationwide collector for her name, but the collector would not provide it.

84. Since this second call on May 5, 2014, Nationwide has called Ms. Green an additional five times.

85. As a result of Nationwide's acts as alleged above, Ms. Green has suffered damages.

### COUNT I – Fair Debt Collection Practices Act (All Defendants)

86. Ms. Green incorporates the preceding allegations by reference.

87. At all relevant times Defendants – in the ordinary course of business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

88. Defendants are "debt collectors" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

89. At all times relevant to this complaint, Defendants sought to collect a "consumer" debt from Ms. Green.

90. Defendant's actions to collect this alleged debt from Ms. Green violated the provisions of the FDCPA including, but not limited to, the following: 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), 1692d(6), 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(10), 1692e(11), 1692e(14), 1692f, 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5).

91. Ms. Green has suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code (Nationwide and Cooper) as alternative to claims under the Michigan Collection Practices Act

92. Ms. Green incorporates the preceding allegations by reference.

93. Nationwide and Cooper are each a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

94. Ms. Green is a "debtor" as that term is defined in M.C.L. § 339.901(f).

95. Nationwide's and Cooper's foregoing acts in attempting to collect this alleged debt against Ms. Green constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915(a), 339.915(e), 339.915(f), 339.915(g), 339.915(n), 339.915(o), 339.915(q), 339.915a(b), 339.918(1)(d), and 339.918(1)(e).

96. Ms. Green has suffered damages as a result of these violations of the MOC.

97. These violations of the MOC were willful.

**COUNT III – Michigan Collection Practices Act (Nationwide and Cooper) as alternative to claims under the Michigan Occupational Code**

98. Ms. Green incorporates the preceding allegations by reference.

99. Nationwide and Cooper are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g).

100. Nationwide's and Cooper's foregoing acts in attempting to collect this alleged debt against Ms. Green constitute violations of the MCPA including, but not limited to, the following: M.C.L. §§ 445.252(a), 445.252(e), 445.252(f), 445.252(g), 445.252(n), 445.252(o), and 445.252(q).

101. Ms. Green has suffered damages as a result of these violations of the MCPA.

102. These violations of the MCPA were willful.

**Demand for Jury Trial**

103. Ms. Green demands trial by jury in this action.

**Demand For Judgment for Relief**

104.   *Accordingly, Plaintiff Cynthia Green requests that the Court grant:*

    a.   *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    b.   *Statutory damages.*

    c.   *Exemplary damages under Michigan law.*

    d.   *Statutory costs and attorney fees.*

Respectfully Submitted,

By: s/ Amanda M. Longendyke
Amanda M. Longendyke (P77777)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for Cynthia Green
24500 Northwestern Highway, Suite 206
Southfield, MI 48075
(248) 208-8864
Amanda@MichiganConsumerLaw.Com

Dated: November 6, 2014